[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

RECEIVED
12/30/2020
MP

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**1**

RECEIVED

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS** 12: 01
**EASTERN DIVISION**

Marci Marie Webber )
_____, )
)
)
Plaintiff(s), )
)
vs. )
State of Illinois, IDHS, )
DuPage Co. States Attorney )
Second District Appellate Court )
Defendant(s). )

**1:20-CV-7807**
**JUDGE NORGLE**
**MAGISTRATE JUDGE KIM**

Case No.    10 CF 2643

*EMERGENCY*
**COMPLAINT FOR VIOLATION OF CONSTITUTIONAL RIGHTS**

*This form complaint is designed to help you, as a* **pro se** *plaintiff, state your case in a clear manner. Please read the directions and the numbered paragraphs carefully. Some paragraphs may not apply to you. You may cross out paragraphs that do not apply to you. All references to "plaintiff" and "defendant" are stated in the singular but will apply to more than one plaintiff or defendant if that is the nature of the case.*

1.    This is a claim for violation of plaintiff's civil rights as protected by the Constitution and

laws of the United States under 42 U.S.C. §§ 1983, 1985, and 1986.

2.    The court has jurisdiction under 28 U.S.C. §§ 1343 and 1367.

3.    Plaintiff's full name is **Marci Marie Webber**                    .

*If there are additional plaintiffs, fill in the above information as to the first-named plaintiff and complete the information for each additional plaintiff on an extra sheet.*

1

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

**2**

(Defendants list may include more)

4. Defendant, Mary Flemming, Jennifer & Joe Lindt, Esq's Dr. James Corcoran (IDHS) Dr. David Albert (IDHS) Dr. Robert Sabut (IDHS) Daniel Dyslin (IDHS legal) Richard Fernandez (IDHS)

~~(print officer's number if known)~~

an officer or official employed by DuPage Co. States Attorneys Office

(department or agency of government)

& IDHS & State of Illinois                or

☐ an individual not employed by a governmental entity.

*If there are additional defendants, fill in the above information as to the first-named defendant and complete the information for each additional defendant on an extra sheet.*

5. The municipality, township or county under whose authority defendant officer or official

acted is DuPage County, IL. As to plaintiff's federal

constitutional claims, the municipality, township or county is a defendant only if

custom or policy allegations are made at paragraph 7 below.

6. On or about Dec 23rd 2019 at approximately 11:00 ☒ a.m. ☐ p.m.

(month,day, year)

plaintiff was present in the municipality (or unincorporated area) of Elgin

DuPage Co. enroute to Chicago, in the County of DuPage Co.,

State of Illinois, at _____,

(identify location as precisely as possible)

when defendant violated plaintiff's civil rights as follows *(Place X in each box that applies)*:

☐ arrested or seized plaintiff without probable cause to believe that plaintiff had committed, was committing or was about to commit a crime;

☐ searched plaintiff or his property without a warrant and without reasonable cause;

☐ used excessive force upon plaintiff;

☒ failed to intervene to protect plaintiff from violation of plaintiff's civil rights by one or more other defendants;

☐ failed to provide plaintiff with needed medical care;

☒ conspired together to violate one or more of plaintiff's civil rights; -K ✗

☐ Other See attached exhibits/affidavit ✗ : A-K ✗

Used false information & lack of appropriate Service to force Marci Webber to return to IDHS Custody by means of Appellate Stay. Caused more false information to be presented on court reports using group sheets for groups not held, provocation, excruciating stress, poor sleep abuse and outright fabrications

[If you ~~need additional space~~ ~~for~~ ~~this~~ ~~section~~, ~~please~~ ~~attach~~ ~~an~~ ~~additional~~ ~~sheet~~ ~~and~~ ~~reference~~ ~~it~~] stay and/or lifting the Stay in accordance with dictates of Foucha v. Louisiana the US & IL State Constitutions & State law. It's retaliatory.

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

3

Add → Rights to a Least Restrictive Environment, unnecessary restraint, liberty
real → Privacy, due Process & Equal Protection of the law have been Violated —
treatment + This is false imprisonment
+ to refuse → retaliatory methods, using fraudulent
Treatments

7. Defendant officer or official acted pursuant to a *custom or policy* of defendant

municipality, county or township, which custom or policy is the following: (*Leave blank*
*if no custom or policy is alleged*): To treat NGRI acquittees
as if their verdict was guilty but mentally
ill and detain them wrongly & as long as
possible. In my case, after rightfully being released
and not ~~are~~ providing a Least Restrictive Environment;
other constitutional rights such as in FOUCHA v. LOUISIANA SCT.

8. Plaintiff was charged with one or more crimes, specifically:
1st degree murder; found Not Guilty by Reason
of Insanity then wrongfully committed as if
still both mentally ill and dangerous &
contrary to the State's stricter requirement of
" reasonable expectation to commit serious bodily harm
on self or others" from the mental illness causing the initial crime

9. (*Place an X in the box that applies. If none applies, you may describe the criminal*
*proceedings under "Other"*) The criminal proceedings

☐ are still pending.

? ☒ were terminated in favor of plaintiff in a manner indicating plaintiff was innocent.[1] (NGRI acquittee)

☐ Plaintiff was found guilty of one or more charges because defendant deprived me of a

fair trial as follows _____

_____

☒ Other: plaintiff was found NGRI June of 2012, was
denied effective counsel & full, proper hearing for commitment
then after release Dec. 2019, forced back to ostensibly provide
a "status quo" that never was actually in the community (successfully
after the DOI) and improper motives of the State's "emergency"
motion to stay the trial courts release using false information.
The "Status Quo" prior to release was never reinstated. plaintiff
receives no ~~necap~~ only abuse and is risked to COVID-19 virus
while being held in a mental facility to wait the outcome of the State's Appeal
while her records are continued to increasingly be falsified on an acute unit.

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

4

10. Plaintiff further alleges as follows: (*Describe what happened that you believe supports your claims. To the extent possible, be specific as to your own actions and the actions of each defendant.*)

After Waiting nearly a decade under excruciatingly abusive conditions Judge George Bakalis ordered IDHS to transition Marci Webber out of custody on Sept. 18th 2019. On December 11th 2019 Judge Bakalis released Marci Webber, prose, to an apartment IDHS was apprised of weeks earlier & had an order to view. On December 20th (FRI) Marci Webber retrieved an "emergency" motion to Stay Judge Bakalis' decision via regular mail. Immediately she sought to respond and was told by the appellate court clerk she had until Dec 27th 2019 to respond. At 8AM on Mon. Dec 23rd 2019 Robert Hanrahan, P.I. & Marci Webber sought instructions at the 2nd district Appellate Court in Elgin, Il where they were given an order to Stay Judge Bakalis' decision. Later that morning Judge Bakalis was forced to sign a bench Warrant. Later that day marci turned herself in to Chicago Read M.H.S. (IDHS)

11. Defendant acted knowingly, intentionally, willfully and maliciously. Yes

12. As a result of defendant's conduct, plaintiff was injured as follows:

Deprivation of liberty, refusal to give any form of near "Status Quo" refused therapy while receiving abuse instead & others that flow from an illegal detainment begun in June of 2012 in IDHS custody but focused on here, after release on Dec 12 2019, 2020 current date.

13. Plaintiff asks that the case be tried by a jury. ☐ Yes ☒ No

* IN a Nutshell I'm detained by an Unlawful Stay order that IDHS & the State Can lift which was gained by use of False information & improper service — See DuPage Co. 10 CF 2643 into appeal 2nd Dist

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

* I was unlawfully committed too using False information to do it & continue it.

5

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

14.    Plaintiff also claims violation of rights that may be protected by the laws of Illinois, such

as false arrest, assault, battery, false imprisonment, malicious prosecution, conspiracy,

and/or any other claim that may be supported by the allegations of this complaint.

yes

**WHEREFORE,** plaintiff asks for the following relief: immediate release ¿

A.    Damages to compensate for all bodily harm, emotional harm, pain and suffering,

loss of income, loss of enjoyment of life, property damage and any other injuries

inflicted by defendant;

B.    ☒ *(Place X in box if you are seeking punitive damages.)* Punitive damages

against the individual defendant; and

C.    Such injunctive, declaratory, or other relief as may be appropriate, including

attorney's fees and reasonable expenses as authorized by 42 U.S.C. § 1988.

Plaintiff's signature: _Marci M Webber_

Plaintiff's name *(print clearly or type)*: Marci Marie Webber

Plaintiff's mailing address: CRMHC 4200 N. Oak Park Av.

City Chicago          State Il   ZIP 60634

Plaintiff's telephone number: (773) 794-4036 / x 3950

Plaintiff's email address *(if you prefer to be contacted by email)*: _____

No access

15.    Plaintiff has previously filed a case in this district.  ☒ Yes ☐ No

*If yes, please list the cases below.* 2014

Just one on a forced injection in IDHS without cause
that was dismissed on summary judge with false information
*Any additional plaintiffs must sign the complaint and provide the same information as the first* on IDHS
*plaintiff. An additional signature page may be added.* part

5

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

6

# Certificate of Service

I, Marci Webber, pro se, attest that this complaint which under the pains & penalties of perjury is the sworn truth has been given to (or will be after an address is found for a defendant) Esther Ellison (SW) for all in the US Mail. I will try to get a process server, too.

Marci M Webber

12/16/2020 1pm

Under the pains & penalties this is the sworn truth.

7

**Exhibit A — AFFIDAVIT in Pleading form:**

In reference to Page 2 of Marci Webber's federal case against the State of Illinois, IDHS, et.al. the following pages are the sworn truth under the pains and penalties of perjury:

In June of 2012 Marci Webber (myself) was Acquitted as Not Guilty by Reason of Insanity. Under ineffective Counsel She was not apprised of her commitment hearing while falsified IDHS reports were stipulated by her Public Defender. She was never given any independent evaluations Prior nor any evaluations arranged by her Public Defender in the years that followed a sort of rubberstamped in-patient

Commitment at Elgin Mental Health Center which has the Maxium Security for females over and above chicago Read Mental Health Center where Marci Webber currently has been detained for a year. She was detained at Chicago Read Mental Health Center (CRMHC) for 13 months in 2016-2017.

The following years since Marci's 2012 commitment without a full, fair hearing have been violative of the dictates of <u>Foucha v. Louisiana</u>, 504 US 71, Sct 1992, the US and Illinois Constitutions, the Illinois Mental Health Code and

9

Other laws including what flows from Brady v. Maryland, SCt.

Marci's "medical" records have also concealed the cause of the 2010 tragedy and grown in fabrications and legal language to present a Perniciously false persona of danger to both the trial and appellate Courts as well as the media.

On October 27th, 2020 Judge George Bakalis acquiesced to Marci's request to represent herself over Jennifer Lindt, ASA's and Mary Flemming, Appellate ASA's objections to

- 3 -

10

be heard on the **falsifation** of her Court reports (see attached exhibits from this issue on record and what will be part of an offer of Proof via youtube link —

\* with the correction that it is Du<u>page</u> not <u>Cook</u> Co.

start→ youtube.com/watch?v=bNY-N Elaeug**&**<u>feature</u>=youtu.be ←]end

↑(lowercase "L") (ampersand)

In addition, <u>at least</u> a couple dozen IDHS employees have expressed the same opinions as Marci's few outside medical experts that testified resulting in the September 18th, 2019 order for IDHS to transition Marci

— 4 —

Out of Custody. Matter of fact in November 2020 Dr. JoAnne Langley (psychologist and past administrator at Elgin) told Marci "you need to go after them for hurting you."

Since Marci was conditionally released, Pro Se, to Successful living (as evidenced on the record) She was wrongfully forced to return to the "care" of Dr. Anatoliy Pyslar (psychiatrist) who told her in November 2019, a month

before her December 11th, 2019 release "I'm fine if the judge lets you out... Maybe he feels you've <u>suffered</u> enough". The Supreme Court has dictated that NGRI acquittees can-<u>not</u> be punished yet that is all Marci has received along with outrageously pernicious slander and libel since she refused the 600 mg of Seroquel which was harming her (see youtube videos listed in attached Rebuttal to the August 13th, 2020 court report which is what was sent late by CRM4C to be received after her served

- **6** -

13

Copy was already addressed
On October 27th 2020 resulting
in the setting of a January
12th 2021 court date); IDHS
constantly obstructs.

Marci vehemently denies
ever being both mentally ill
and dangerous under Illinois
and US Constitutional Standards
except while medicated and
under extreme stress and
trauma in 2010 With Maggie
her beloved, cherished daughter
after Maggie was sexually
assaulted at a Catholic church
and towards herself in 2017
against her desires after

- 7 -

Judge Bakalis failed to release her — a suicide attempt Marci did not follow through on which caused no injury, but IDHS caused.

The Appellate Stay of Judge Bakalis' (presiding since the beginning in 2010) decision was wrongfully obtained with false information then Marci's hands tied from getting to the Illinois Supreme Court by "Contract" with Equip for Equality lawyers and the Illinois Supreme Court refusing

— 8 —

15

to hear argument on the
issue of the Stay because
"the appellate briefing
Schedule had begun."

Marci Should not be forced
to continue to wait out the
appeal while IDHS orchestrates
a worse false persona and
increases Violations [on this
**December 15**th at 12:30 Am
CRMHC Started 3x/ week
Security lead room searches
that months ago after a
May 15,2020 falsely documented

- 9 -

4th of 4 room searches in 8 days (the others were not recorded) the nurse manager, Adebisi Olesimbo admitted "we know you have a problem with trauma from security..." and Medical Director, Dr. Robert Sobut admitting at Marci's September staffing "we know you've been repeatedly trauma-tized."] Knowing with deliberate indifference it is extremely harmful (see the warnings of the years of increases in restrictions on record by Dr.'s Toby Watson, Dathan Paterno and Lesley Kane) to

— 10 —

Marci during COVID-19 re-
strictions which have not
been eased since March in
any significant way. The
behavior ("Calculated" by the
Medical Director, Dr. Robert
Sobut) of Staff towards Marci
are reminiscent of her days
at Elgin woken up by up to
10 security and staff for bogus
room searches nearly everyday
And the restrictiveness increased
Upon her at the time of her
2017 release hearing and
Prior to her wanting it to stop
So badly and November 15th,

18

2017 Suicide Attempt seeking release.

Marci has <u>no intention</u> of resorting to Suicide as a means for release ... but is acutely aware of the fact that <u>every</u> human has its breaking point, especially after c. 8 years of straight abuse and nearly no acts of genuine, helpful Kindness. She needs to be returned <u>immediately</u> to her apartment and out of the reach of IDHS, and malicious state actors. Please! ~Marci M Webber

12/16/2020

Under the pains & penalties of perjury this is the truth.

— 12 —



**Exhibit B**

19 8250
7150

LETTER - RECEIPT OF FILINGS - CR/TR

1160 (Rev 3/20)



# OFFICE OF THE CIRCUIT COURT CLERK
## CHRIS KACHIROUBAS, CIRCUIT CLERK
### 18th JUDICIAL CIRCUIT COURT - DU PAGE COUNTY

Oct 28, 2020

People of the State of Illinois

VS

Marci M. Webber
Defendant

**\*FILED\***
OCT 28, 2020 01:59 PM

*Chris Kachiroubas*

**CLERK OF THE
18TH JUDICIAL CIRCUIT
DUPAGE COUNTY, ILLINOIS**

Case No. 2010 CF 2643

This letter will acknowledge receipt of the following:
Rebuttal

which has been filed in the record in the above captioned case on __October 28, 2020__ . Copies of this filing have been forwarded to the following:

☐ The Honorable **Daniel P. Guerin,** Chief Judge of the 18th Judicial Circuit Court

☐ The Honorable **Brian F. Telander,** Presiding Judge, Felony Division

☐ The Honorable **Joseph T. Bugos** , Presiding Judge, Misdemeanor and Traffic Divisions

☒ The Honorable __George J. Bakalis__ , Trial Judge

☐ The Honorable **Robert Berlin,** State's Attorney of DuPage County

☐ The Honorable **Kwame Raoul,** Attorney General of the State of Illinois

☐ DuPage County Public Defender

☐ Sent to the Second District Appellate Court

☐ Office of the State Appellate Defender

☐ Office of the Official Court Reporters

☒ Placed on Call by Clerk per Rule 30.10 - Court Date November 18, 2020 at 9:00 a.m.; Room #4006

☐ _____

for their further action pursuant to the laws of the State of Illinois or the Supreme Court Rules. You will be advised of the outcome of those proceedings **if required by law or rule of court.**

Sincerely,

Chris Kachiroubas
Circuit Clerk

A.O'Brien
Prepared by

**DuPage County Judicial Center**
505 N. County Farm Rd. Wheaton, Illinois   Mailing Address - P.O. Box 707 Wheaton, Illinois 60187-0707
CustomerService.CircuitClerk@18thjudicial.org

20  **\*FILED\***

OCT 28, 2020 01:59 PM

*Chris Kachiroubas*

CLERK OF THE
18TH JUDICIAL CIRCUIT
DUPAGE COUNTY, ILLINOIS

## IN THE CIRCUIT COURT OF DUPAGE COUNTY

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS<br>Plaintiff<br><br>v.<br><br>MARCI WEBBER<br>Defendant | Case No. 10CF2643<br>The Honorable George Bakalis |

# MARCI WEBBER'S REBUTTAL TO IDHS' FALSE 90-DAY REPORT OF 8-13-2020: OCTOBER 21, 2020

## Preliminary

I. Due to years of IDHS increasing their falsehoods in all of Marci Webber's reports especially since the wrongfully obtained Appell-

-1-

ate Stay of which they have the power to request its removal this report has been Prepared under an enormous disadvantage and stress for the record as rebuttal. Due to credibility customarily given to doctors (i.e. when Ms. Webber turned herself back into the custody of IDHS She referenced Phone conversations on her cell phone With Dr. Anatoliy Pyslar only to receive a response from Dr. Pyslar of "I'll deny it, they'll believe me") this report must cover a

-2-

21

Significant amount of material while attempting to be concise and brief. Considering Ms. Webber's life is on the line she respectfully requests patience and compassionate deference as a Pro Se litigant in a uniquely complicated and adversarial situation. Under the pains and penalties — and over her own life and soul which has little value without her beloved daughters — Marci swears this document to be the truth, unlike IDHS' court reports.

Marci M Webber
10/21/2020

—3—

II. After years of IDHS Obstructing Ms. Webber's ability to defend herself and be released using the psychological affects of an environment that causes learned helplessness and stockholm Syndrome as Dr. Toby Watson pointed out and the lowering of I.Q. pointed out by IDHS psychologist Mazahur Khan Ms. Webber will only be able to address **some**"evidence" that IDHS falsely claims relevant to Keeping her locked up in an environment more abusive and restrictive than What Dr.'s Lesley Kane, Toby Watson and Dathan Paterno warned the Court against continuing.

— 4 —

22

The Court already alluded to the dishonesty of the court reports when it leniently expressed "concern" about the "accuracy" of the Court reports when it opined Ms. Webber would "never receive good therapy with IDHS" in the September 18th, 2019 order. The act of release when Webber presented the packet the State's attorney <u>shoved</u> in a more aggressive manner at Ms. Webber <u>in</u> <u>Court</u> than she has <u>ever exhibited</u> under the outrageous constraints of IDHS speaks volumes. The attached IDHS group sheet (one of many) stating Ms. Webber "is symptomatic but, able to participate" with an attendance "refused" when there have been no groups speaks more! Fraud is pervasive within IDHS!

* 

—5—

III. Videos for the record from the following links:

youtube.com/watch?v=quJZmGBwJMM&feature=youtu.be

youtube.com/playlist?list=PLrz95p37EVh-Y9sTwhHnHYp2rKfdl7y9_

youtube.com/watch?v=AF9gceC6J_4&feature=youtu.be

evince an <u>enormous</u> amount of <u>Context</u> that a dishonest IDHS feels comfortable Omitting from court reports and testimony. The fact that <u>all</u> of the videos show Webber as she has appeared numerous times (<u>always</u>) before the <u>judge</u> presiding for <u>a decade</u> over her case who released her, Prose, On December 11th, 2020 bolsters the credibility of Webber and her experts of which in 2 hearings included several

* IDHS doctors supporting her release despite their <u>opposing</u>, signed court reports.

—6—

23

The videos show Webber improving 3 months after refusing to continue 600mg of seroquel for supposed "Prophylatic" reasons as an antipsy- chotic despite a pernicious environ- ment since the end of 2013. Just like the description of Webber in Dr. Laura Bauhof's recently submitted affidavit Webber shows "good insight" and "appropriateness of mood." Webber does not exhibit any "screaming" of which Dr. James Corcoran falsely testified about and her court reports have since cont- inued. Webber is not as the reports suggest at all. She is able to "modulate her emotions," is not "demanding, oppo- sitional, intrusive, provacative, antagon- istic, profane, derogatory, demeaning... [or]

grossly inappropriate …[in] social interactions…" claimed on page 2 of IDHS' 8-13-2020 report.

After reading it on October 19th, 2020 an IDHS employee who interacts with Ms. Webber on most days opined that it is not even an inkling like Marci.

After reading Marci's February, 2020 report IDHS psychiatrist Dr. Anna Rohrbacher opined "this is **Way** worse than you **really are.**"

IDHS psychiatrist Dr. Mir Obaid responded to IDHS' false assertion that Marci has a "persecutory belief system" with an emotional "**that's a big lie.**" A statement —truth— usually suppressed by fear of job loss.

24

This dishonest narrative that
Some "Chronic Psychiatric
disorder or Outstanding char-
acter pathology" which cause
Marci to be some out of con-
trol "demanding, harassing,
screaming, provoking" mess
IDHS puts forth would be easily
Proved false in a full hearing
With her past charts from all 4
Of her hospitalizations (i.e. Glens
Falls hospital in February 2002
recorded **Zyprexa** causing Marci
"agitation". Note: being placed
With **IDP** (intellectually **deficient**
Patients) who **predictably** target,
harass, abuse and relentlessly
attack Marci almost daily, (like

-9-

Antoinette did from 12/23/19 to
6/24/20 while staff had been in-
structed not to write this very
important, emotion-affecting
**context** in Marci's chart) instead
of an IDP who would not vicious-
ly go after Marci (like Christina
who lived entirely peacefully with
Marci in 2017) would cause any-
one to react as marci has on
select occasions] 80% of the
time Marci has stuffed, **for weeks,**
feelings because she has **no**
therapeutic services or really
effective access to coping **tools.**
**Dr. Obaid** stated "**I'd be worse**
[than Marci in this situation]" and
even had to intervene several

-10-

25

Times to mitigate staff cruelly taking a TV/DVD coping **tool** (attached) which kept Marci completely balanced and **calm** then "setting [Marci] up" in the exact manner Dr. Obaid told Marci IDHS are "experts" at doing to <u>cause</u> reactions that can be wrongly pathologized. Should Dr. Obaid be locked up because he admits he'd be "**Worse**"? In numerous conversations Dr. Obaid discredits IDHS' characterizations as "**not a mental illness**". (a **complaint** that Dr. Obaid wrote — to no avail — is attached)

For example, IDHS falsely claims Marci "blames" when

-11-

She hasn't or that her husband had "forced" her into "psychiatric help." She sought out relief for the stress and pain of a **custody battle** as the **most** important thing to her (Mallory) was in jeopardy. She took his advice, naively, as well as that of a pill-pushing doctor who did not utilize other methods first or recognize the anxiety and insominia which emerged from starting **Paxil** were not from "mental illness" as she did <u>not</u> have one before, but

-12-

26

in fact from Paxil. Marci
never characterized this as
"Victimization" and twenty
years of insurance codes
and records before the
2010 tragedy will show that
all of Marci's hospitalizations
involved meds unlike IDHS,
at this late date after
a wrongfully obtained Stay
Order, falsely claims. Access
to these records to submit
to the court and a hearing
would prove IDHS to be
Mendaciously Vicious.
Marci has never Seriously

-13-

harmed anyone including herself outside taking meds and 2010's event. IDHS' claims are proved false also by the fact that they have never petitioned a court for forced meds even after the 2017 suicide attempt Marci came to them about while taking benadryl (something Corcoran blamed on 9/6/16 in conjunction with Zoloft which he gave her and discontinued due to Marci getting akathisia in jail during Dr. Wasyliu's testing) and cyclobenzaprine

-14-

27

or Dr. Malis (discredited by this Court) threatened in 2015. The bout of akathisia in jail at the end of January, 2011 was not recorded in Marci's Chart but 4 employee-witnesses have been located. — Do the math ... With the "Med issue" as reporter Christy Gutowski put it.

The wrongful obtainment of a Stay Order has been **Not** to "Preserve" any "status Quo" to preserve the "fruits of an appeal" but to "await the outcome of appeal" (pg2) and

Create a Situation to cause Marci to react from harm and worsen Marci's records just like the past pattern to keep exculpatory material out of court records in accordance with a psychiatry/medication (see the side effect lists and Equip for Equality's appellate brief) Protection agenda. This is a fraudulent display of Malicious Prosecution on an honest, good "acquittee."

IV. Because Marci sticks to the truth against an IDHS that Puts the public at risk by not educating patients about akathisia Marci has been placed in excruciatingly abnormal Conditions "aberrant" from Community living. It is not rocket science

— 16 —

28

or Dr. Malis (discredited by
this Court) **threatened** in
2015. The bout of akathisia
in jail at the end of January,
2011 was <u>not</u> recorded in
Marci's chart but 4 employee-
witnesses have been located.
— Do the math... With the
"**Med Issue**" as reporter
Christy Gutowski put it.

The wrongful obtainment of
a stay order has been **Not** to
"Preserve" any "status Quo"
to preserve the "fruits of
an appeal" but to "await
the outcome of appeal" (pg 2) and

-15-

Create a situation to cause
Marci to react from harm and
Worsen Marci's records just
Like the past pattern to keep
exculpatory material out of
Court records in accordance
with a psychiatry/medica-
tion (see the side effect lists and
Equip for Equality's appellate brief)
Protection agenda. This is a
fraudulent display of malicious
Prosecution on an honest, good
"acquittee."

IV. Because Marci sticks to the
truth against an IDHS that
puts the public at risk by
not educating patients about
akathisia Marci has been placed
in excruciatingly abnormal
Conditions "aberrant" from
community living. It is not rocket science

- 16 -

29

that IDHS is not telling the truth about any "expect-ation" for Marci to become dangerous again. That type of 2010 "perfect storm" does not have a chance of repeat-ing. For 43 years prior and a decade afterwards Marci has caused no serious harm to anyone.

Dr. Orest Wasyliu who testified as the States' Witness at the initial trial opined that but for that 2010 "perfect storm" there was "**no** chance" for Marci to harm anyone (see Equip for Equality's Appellate brief). IDHS appears to be trying to "build a case against Marci" (see Nichols, T.'s testimony), cover for the meds and insulate themselves from liability. Marci should be believed over IDHS.

- 17 -

V. First, daily voicemail documentation in Marci's emails are inaccessible due to IDHS "policy." They would evince the opposite of IDHS claims showing that Marci is constantly harassed, threatened (even by staff who gloat "the pen is mightier than your mouth" because staff lie) and verbally or psychologically abused by IDP's (Intellectually deficient patients) and at times staff while no one "intervenes" as IDHS claims. If the court desires these or any of the audio recordings not turned over in the past it can ask for it. The videos of Marci speak loud and clear that she is more sane and nondangerous than most released from IDHS (recently a newly discharged male **killed himself with meds.** Dr. Pyslar's **reaction was a non-caring shrug**).

· **The fact that 1)** Marci's "services" have been "calculated" to share harmfully restrictive living quarters with IDP's

−18−

30

that predictably target Marci
emotionally and physically
Without relief or allowance
of effective Coping tools or
Trauma counseling while
all groups have been suspended
Since March despite the Stay
at home order being lifted
and less than 10 patients on
the unit. 2) The purposes of
the Stay Order forcing her back
have never been met. 3) The
false statements, even reach-
ing back 20 years after the
Judge stated it as no longer
relevant, that mislead as
to Marci's real psychological
health Shown on almost a dozen
Videos from 2013 three months
after refusing seroquel to 8/6/2020

have been proven false. 4) Dr.
Corcoran testified he had
"Successfully" treated
Marci in jail (sure, by him
discontinuing Zoloft). 5) That
Marci never succumbs to any
"innate impulsivity" to even
defend herself against such
as a patient pounding on
her head 7 times while
Staff told her "impulse"-
Satisfying friend Loretta
Vaughn to "sit back down"
When she got up to protect
Marci — Staff rarely inter-
vene (see Mike Sink's affidavit
Sent to Judge Bakalis for the
record). Marci handles this
non-"customary" environment

— 20 —

31

better than Dr. Obaid said
he would because she alter-
nates avoidance they char-
acterize as pathological
"isolation" by going to her
room stuffing feelings like
she's Pavlov's dog from what
the Supreme Court calls "aversive
conditioning" to verbally def-
ending herself or venting [not
because she feels "disrespected"
but because being bullied and
staff allowing it hurts and can
lead to "Depression, anxiety and
Suicide" (see the books Social by
Matthew Lieberman and Trauma
and Recovery by Judith Lewis Herman)
and is not wise to endure as long
as IDHS is forcing (7 years)]
6) The judge heard testimony to

evince that IDHS does not "rule
out" any "mental illness" but in
fact "builds cases against" (see
Nichols, Terry's testimony) to mis-
characterize med tragedies like
Marci's as "psychiatric" and
"chronic" versus situational or
any thing but something they can
deplete our tax base with using
"services" that are not "reasonably
calculated to significantly
improve" people, especially
Marci, as the Mental Health
Code dictates. IDHS says one
thing then does the opposite.
Knowing this Judge Bakalis
wisely, but unfortunately tardily
**released** Marci to the safety
of HER OWN APARTMENT-
Where she was successfully
(See Dr. Laura Bauhof's affidavit, 9/25/20)

-22-

32

healing and complying with all
the Court's Conditions. This was
an apartment arranged by
the still supportive (indefin-
ately) Outside system of which
the State mischaracterized as
"unknown" after IDHS refused
to exercise the 10/13/19 Order to
View the apartment, meet with
Mr. Johnson who is still waiting
for 1 meeting (see bottom of Marci's
letter to Dr. Cummings with the Writ
request recently filed) after a signed
Lease was tendered in court after
Providing the information to Marci's
case worker. Telling the appellate
Court that housing is "unknown"
as the State did to Wrongfully
Obtain a Stay Order is unethical,

-23-

7) Marci did <u>none</u> of the things she is accused of or speculated as at risk of for the couple of weeks she was free. She ate peacefully at the Drake with Terry Johnson, Esq. With whom IDHS refuses to meet and Bob Hanrahan, P.I. took her shopping at various shops in Oak Brook without <u>any</u> of the behaviors IDHS claims presenting. Marci ate at Cooper's Hawk surrounded by wine without any cravings on two occasions. No "aberrant" behaviors, no "screaming" or anything negative (just like in the videos) resulted. Proves IDHS cannot be trusted

– 24 –

33

and their court report should be
ignored while Marci is returned
to what Judge Bakalis ordered
Marci, Prose, to do upon release
On December 11th, 2019,

1. This report reveals, especially
When compared to video, audio,
testimony, past reports and
Common sense, the ~~IDHS~~ "influ-
ences" noted in the Courts de-
cision are even harder at
Work to cover bases worth
enough to some people to
break the law — perjury is
against the law.

2. IDHS' "services" becoming
   Worse after Marci ~~attempted~~

— 25 —

to relieve the pain the only way she could, by suicide, show worse than "deliberate indifference" of an acquittee, a human being. It shows how much they want to "shut her mouth" about the meds like Dr. Carole Rosanova told her in 2016 when she said they'd "sleep deprive [her] into psychosis" — tried in 2017 after her suicide attempt, LaTonya Simmons, STA, told Marci "you're lucky you comprehend what's going on." so she could get one hour consecutive sleep LaTonya spared Marci, closing her door while on 1:1 while IDHS refused to tell patients what akathisia is.

—26—

34

3. IDHS shows, again, the lengths of exaggeration and falsification it Will go to in order to tie (chain) MARCI to a "broken" system that harms her and refuses to treat her as an acquittee and by the Merits of her case by mis-Characterizing her past alcohol use and need for further "treat-ment." **They refuse** to offer the evaluation by Healthcare altern-ative services (whom they employ) recommending only continued counseling after a thorough eval-uation and random drug/alcohol test that was negative. They do not state that the DUI's (2) were While on paxil which is known to cause akathisia/alcohol cravings **TWENTY YEARS** ago or refer

- 27 -

to the information supporting
the self-medicating of akathisia
by renowned psychiatrist David
Healy or the fact that Marci does
not exhibit drug/alcohol seeking
behavior (ever — since before 2010) or of
making hooch. Page 3 clearly evinces
what Jeff York, Esq. told the court
in 2017-18 ; IDHS has no intention
of releasing Marci as they keep
adding hurdles. Their patronizing,
narcissistic, manipulative mis-
characterizations suggesting
Marci's insight and judgment is
deficient when Dr. Bawhof found
this untrue upon Marci's release
are obscene. Marci knows exactly
why she chooses (among a lack of pro-
vided choices — See Videos) to behave as

— 28 —

35

She does and the fact that IDHS doctors never **ask** her why or what she thinks or feels shows their claim as "evidence-based" is false along with their characterization of Marci. It's the "treatment" team's **judgment** to continue the criminal act of perjury that is "Poor." They don't even describe exactly what constitutes "treatment" or how it is supposed to help Marci. Isolating or letting patients beat the crap out of her or bully her (staff do this too and threaten false chart notes to keep her confined in this) which leads normal people — like Marci — into depression and anxiety and even suicide then "blaming" the victim/patient resembles "treatment of runaway slaves with "drapetomania!"

-29-

All of this would make anyone "angry and embittered"—one of the rarely accurate statements which does <u>not</u> make Marci dangerous. However, IDHS who did not fire the staff, Jim Alm, who brought a knife on the unit which was hanging out of the side, netted pouch of his backpack across the top of a counter **of** which Marci could not possibly (even according to Dr. Obaid) reach over to access is what is dangerous. Instead they covered for Jim in this report similar to what they did in a previous addendum calling a delusional, lying IDP a "second hand" witness instead of retracting the 5/12/2020 cup of water lie as never occurring. It misleads.

-30-

36

Here, IDHS constructs this report to cover the fact that the "Satan... Crazy train" note was written by Jim Alm and that he was not even present — Mike Harbin was and conceded the IDP was causing the problem and Marci was making light of it. This was after Dr. JoAnne Langley told Marci she had to report the knife incident to OIG — Jim and others retaliated. Doing the right thing for Marci always costs her dearly.

-31-

The other notes are selected
and written by vindictive
employees like Pat Pearce
and Wosena Oliver-Smith of
Whom the Court already has
affidavits and amendments
to support that they are as
dishonest as the culprits at
Elgin. A hearing is more app-
ropriate a forum to show this
Since the reports conceal their
identities as they refine their
Cover-up. So Marci asks that
the Court give Marci the credi-
bility She is due and IDHS
their just desert. The sign on
My door (freedom of expression)
Was "Quis Custodiet Ipsas Custodes..."
but they left out "LEAD BY EXAMPLE!"
— Most of the report is not addressed
but marci maintains as misleading.

— 32 —

37

From the 1st draft ( this has a little repetition but is needed)

When taken in context of the 2017 suicide attempt at Chicago Read while on benadryl (known to cause akathisia) as evidenced by Dr. Corcoran's 9/6/2016 admission that meds ("zoloft and benadryl" according to him back then) caused Marci's crime. It's a big deal for the Pharmaceutical industry to have to use black box warnings on meds for suicide, but homicide warnings like Canada has is a whole bigger deal. So, maybe an inquiry should be made as to why Marci's court report at this late date has added this false information on page 3, along with "aggression and sub-

stance abuse" when Marci's only
remotely aggressive act before the
crime was in self-preservation
by grabbing the headrest and
unfortunately the hair of her daugh-
ter's step mom when the mom
had a history of refusing to buckle
the child into a car seat and
Marci was doing it (half way
out of the vehicle/half way in)
When she was called names
by the step mom and as the
car was put into reverse the
scare — exacerbated by effects
(akathisia) of Paxil marci was
taking — caused Marci to grab
for anything. The step mom took
advantage of the situation and
had Marci charged with battery

-34-

38

in 1998. Marci did not retaliate
With a charge of endangerment
With the Vehicle and completed
a "Sentence" of supervision for
a year Without incident yet
the charge which was supposed
to be expunged was not. It
takes a lot for Marci to become
aggressive like fearing for her
life while on Paxil and grabbing
Some hair. A decade later Marci
has never been physically aggressive
Even when LaToya Nickerson an
extremely violent patient threat-
ened to "**snap** [her] neck and **kill
Marci**" and tried or when she tried
to stab Marci in the face with
a pencil then beat on her while

Staff Stood Watch outside the door
and (Mike Sink's affidavit sent to Judge
G. Bakalis should be entered here)
no one was around to help despite
4 days of LaToya threatening to
Kill Marci — LaToya was not put
on a one to one by the same Dr.
Richard Malis Judge Bakalis dis-
Credited, the same doctor who lied
that Marci was not Cavity searched.
Despite enormously outrageous
Stressful Circumstances daily for 7
straight years Marci has not
Succumb to any "Innate Impuls-
ivity" to even defend herself proving
She maintains Control from behavior
Most people would engage in under
her situation now that she is not
Medicated (see the books SOCIAL by
Matthew Lieberman, Trauma and

-36-

39

recovery by Judith Lewis Herman
and Terror, Love and Brainwashing
by Alexandra Stein for an idea of
what Marci is forced to endure
~~thenask~~ what would you do to
stop the pain? — what Marci's
"doctors" know most would do, but
she hasn't). Ask what IDHS' goal
is here? ~~Reactions~~ to this horrible
life are intentionally being mis-
**represented** as "episodic mood
swings" just like Dr. Martinez
claimed under Corcoran when he said
"he **fixed** [Marci's] court report" in Spring,
2017 — look it up. Listen too.
This court report like the others
should be ignored and Marci
discharged to safety away from
IDHS. Marci has never been diagnosed
with any "chronic psychiatric disorder
or outstanding character pathology"
- 37 -

Outside Corcoran's influence. Marci's insurance coding prior to 2010 "Clearly" refutes this false claim. If Marci's problem the last min-ute of her precious child's life (see Equip for Equality's appellate brief) or benadryl and flexeril (meds weren't) the problem causing her suicide attempt after years of abuse (not as bad as now — why?) in 2017 then why hasn't IDHS forcibly medicated her or even taken her to Court as Dr. Malis threatened in 2015? Because Marci is a normal woman off mind/brain altering medications experienc-ing some IDHS inflicted PTSD symptoms! (See Dr. Laura Bauhof's affidavit and Drs Watson and Paterno's testimony. Paterno tested Marci in January, 2020 only to reply "good news

-38-

40

you're still not mentally ill.") Inter-estingly Dr. Denise Blumenthal, Past Social Worker director, asked Marci at that same time "is there any diagnosis you'd agree to before the crime?" When Marci told this to Dr. Pyslar this summer Dr. Pyslar asked "What did **you say**?" Marci's reply was " Sure, **PTSD**," Pyslar then said "Sure, that's to your advantage." Marci said "how so?" Pyslar said "it helps you if you sue." **So**, who's not taking any responsibility while Marci's child-ren suffer **poverty** and **deserve** some real compensation instead of false press harming them too? What's wrong with a little truth and responsibility out of the government? No one could endure Marci's "treatment."

-39-

Wherefore, Marci Webber respectfully requests the Court issue an advisory Order discreditting IDHS like they deserve for the in-coming judge because quite frankly all this "underdog fighting the beast" to Save her life is killing her or to allow the truth to be presented in a hearing, as soon as possible, with a writ instructing Chicago-Read transport Marci Webber to Court.

Sincerely,

Marci M Webber

Marci M. Webber
CRMHC
4200 N. Oak Park Av
Chicago, IL 60634
Marciwebber101@gmail.com
(no access from crmhc)
(773) 794-4036/3950

-40-

41

## Certificate of Service

I, Marci M. Webber, Pro Se, attest that this report is true and accurate under the pains and Penalties of perjury. It has been given to Vera Hosley, sw, to mail to the DuPage County Clerk of Court, Judge Bakalis and Joe Lindt, ASA on October 21, 2020 With **3** attachments of a Group participation sheet for a non-existent group and ignored Complaint by Dr. Obaid to Procure coping tools, Judge's letter. Marci M Webber 10/21/2020 9Am

Marci Webber
4200 N. Oak Park Av
Chicago, IL 60634
(773) 794-4036/3950

-41-

*(handwritten)* Exhibit 1    There have been no groups since March, 2020

*(handwritten)* * This "group" like the others was never held

Unit **B-SOUTH**    Patient Name **WEBBER, MARCI**    Patient ID **000906420**

### Medication Management

| Group Leader Name (Please, print full name) | Group Date | Attendance Code | Start Time |
|---|---|---|---|
| Joseph, Sanitha | 9/16/2020 | R | 1100 |

Attendance Code: A=Attended; L=Left Group; E=Excused; R=Refused; C=Cancelled; S=Substitution; H=Holiday; O=Other

**Data:** Staff used interpreter for group    ☐ Yes    ☐ No    ☑ N/A

☑ Lecture    ☐ Group Discussion    ☐ Handout    ☐ Video

**Attentive to topic:**    ☐ Gave/accepted feedback    ☐ Followed directions
☑ Passive and did not respond    ☐ Disruptive
☑ Other: refused

**Assessment:**    ☐ Patient demonstrates understanding    ☑ Patient is symptomatic but, able to participate
☐ Patient is symptomatic and unable to participate in group at this time
Other:

**Group purpose is to increase patients' understanding of:**

How to recognize and take action to manage and relieve psychiatric symptoms, and when to notify health care professional.

**The group expected outcome and treatment plan goals:**

☐ Effective, patient applies content to treatment

☑ Not effective at this time but, will continue group goals as follows:

Staff will continue to:    Encourage attendance, encourage participation, and continue patient education per treatment plan.

**Additional Comments:**

pt refused to join the group, pacing and stiting in the room. Group talked about the importance of understanding the side effects of medicatons.

**Signature and Title:** *Joseph, RN*    **Date:** 9/16/2020
Joseph, Sanitha

*(handwritten)* —42—

Nursing Group Progress Note
 CR 4501.9 Est. 7/17

**Exhibit 2**
**(ignored complaints — by Dr. Obaid)**

Chicago-Read Mental Health Center

**42**

## COMPLAINT FORM

**Name of Complainant:** MARCY WEBBER
**Unit:** B.So
**Date:** 9-23-2020
**Time:** 1850

**Complaint/Right Violated:**

**Where did it happen (location)?** B.So.    **Phone:** 773-794-3950

**When did it Happen?** 9.23.2020.  18:00

**Describe the Incident/Circumstance:**

Pt. Ms (MW) is c/o following problems that is aggravating her and making her coping skill weak as she loosing hope in this treatment milieu. Following are her complaints.
(1) Pt. (MW) is requesting off unit pass to go to Cafeteria / activity room / exercise, that will help her to allay her frustration.
(2) Pt wants a clear directive from treatment team that she can have a bag of "gummi worm candies" to be allowed to achieve access as much she wants, helps her with her problem of Bruxism.
(3) She wants to have "soda" whenever she feels to have one, at least twice /x.
(4) Pt wants a TV (activity thing) & DVD player access most of the time, as she feels those are her only coping tools.

**Witnesses to incident (please print):**
1. Dr. [____] MD psych.    3. Sabon Simon Alabbell R.
2. Pat Pearce R.N.     4.
meeting 1800 to 2015        Joe Marici MH+2

**Statement of resolution requested:** (What does the complainant what done?)
Complainant advised to discuss her request with Unit psychiatrist and to team.

**Resolution of Complaint:** (how was complaint resolved?)  **Date**    **Time:**
A meeting was held with Ms MW the complainant, Unit RN (Ms.PP) and this writer Psych OP. Ms. MW advised to discuss her request with Unit psychiatrist and to team, and get a written order for each specific problem.

**WEBBER, MARCI**
Complainant's Name (print)

X
Complainant's signature
Marci to sign

9/23/2020
Date

*Attach all existing documentation to this form and forward to Human Rights and Ethics Committee in Administration*

**-43-**



**CIRCUIT COURT OF THE 18TH JUDICIAL CIRCUIT**
DuPage County, Illinois

505 N. County Farm Road
Wheaton, IL 60187



George J. Bakalis
Circuit Judge

September 28, 2020

Ms. Marci Webber
c/o Chicago-Read Mental Health Center
4200 N. Oak Park Ave.
Chicago, IL 60634

RE:    People of the State of Illinois
       v.
       Marci Webber 2010CF2643

Dear Ms. Webber,

I am in receipt of your recent letter asking to be writ in to address the accuracy of the reports filed by Chicago-Read regarding your continued confinement. This is not an issue that can be presently adjudicated. Your case awaits a decision from the appellate court. If that court affirms my ruling, you will be conditionally released. If my ruling is reversed, you will have to again petition the court for discharge or conditional release.

Until a ruling is obtained, I can only suggest that when you disagree with the reports from DHS, you send a letter to the court to be placed in your file indicating point-by-point your areas of disagreement. Those responses should be concise, not overly long.

Sincerely,

Judge George J. Bakalis
Circuit Judge

GJB/cm

-44-

43



10CF2643

Marc Webber 10CF2643
4200 N Oak Park Av
Chicago, Il 60634

DuPage County
Clerk of Court
505 N. County Farm Rd,
Wheaton, IL 60187

CRIMINAL ORDER *Exhibit C*

2010CF002648-1645

**STATE OF ILLINOIS**

**UNITED STATES OF AMERICA**

**COUNTY OF DU PAGE**

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT

PEOPLE OF THE STATE OF ILLINOIS

2010CF002643

VS

CASE NUMBER

MARCI M WEBBER

**FILED**

**19 Dec 11   AM 10: 57**

*Chris Kachiroubas*

**CLERK OF THE**
**18TH JUDICIAL CIRCUIT**
**DUPAGE COUNTY, ILLINOIS**

File Stamp Here

## ORDER

This cause coming before the Court; the Court being fully advised in the premises, and having jurisdiction of the subject matter:

**IT IS ORDERED,** based on the    COURT'S    motion:

PETITIONER  PRESENT IN OPEN COURT IN CUSTODY OF DHS.

COURT ACKNOWLEDGES RECEIPT OF UPDATED REPORT DATED 12/9/2019 FROM DHS AS WELL AS MEMORANDUM FROM THE PETITIONER.

BASED ON THE MATERIALS AND EVIDENCE RECEIVED, THE COURT ORDERS THE PETITIONER SHALL BE CONDITIONALLY RELEASED. PETITIONER ADMONISHED SHE SHALL ADHERE TO COUNSELING REQUIRED; SHE SHALL SUBMIT TO ALCOHOL/DRUG TESTING AS DIRECTED INCLUDING THROUGH THE PROBATION DEPARTMENT;  AND THE PROPOSED TERMS OF THE CONDITIONAL DISCHARGE ARE STATED IN THE MEMORANDUM OF SEPTEMBER 18, 2019.

THE PEOPLE FILE INSTANTER NOTICE OF APPEAL.

THE PEOPLE'S ORAL MOTION FOR STAY OF RELEASE AND ORDER ENTERED TODAY IS DENIED.

THE PETITIONER IS ADMONISHED TO REGISTER AS A VIOLENT OFFENDER AGAINST YOUTH.

CASE IS CONTINUED TO 01/29/2020 AT 09:00 AM IN COURTROOM 4006 FOR STATUS

Submitted by: JENNIFER LINDT

DuPage Attorney Number 50083

Attorney for PEOPLE OF THE STATE OF ILLINOIS

503 N COUNTY FARM RD

WHEATON, IL, 60187

Email: sao4006@dupageco.org

File Date : 12/11/2019

**JUDGE GEORGE J BAKALIS**
Validation ID : DP-12112019-1057-54485

Date : _____ 12/11/2019

CHRIS KACHIROUBAS, CLERK OF THE 18TH JUDICIAL CIRCUIT COURT ©
WHEATON, ILLINOIS 60187-0707

Page : 1 of 1

A - 040

Visit http://www.i2file.net/dv to validate this document. Validation ID: DP-12112019-1057-54485

Exhibit D

45

## AFFIDAVIT OF LAURA A. BAUHOF, Ph.D.

Upon first being duly sworn on oath, I, Laura A. Bauhof, depose, and state as follows:

1.      Ms. Marci Webber began treatment with me in accordance with her conditional discharge on December 12, 2019. Prior to beginning psychotherapy I had spoken with Ms. Webber by phone approximately 5 times while she was at Chicago-Read Mental Health Center and on the morning of December 12 prior to her appointment.

2.      In addition to her appointment on December 12, Ms. Webber also presented for a scheduled psychotherapy appointment on December 17, 2019. At both of her therapy sessions I evaluated Ms. Webber to be appropriately oriented to person, place and time. She did not demonstrate any signs of psychosis. Her appearance was normal and her dress was appropriate. Her mood was anxious and she demonstrated a full range of affect that was congruent to the topic, i.e., when talking about her daughter she was tearful and sad and when talking about her experiences since being released she was smiling and positive. Her memory was intact. Her thought process and perception were both normal. Her interview behavior was appropriate and her speech was normal. Ms. Webber's attention was distractible, which she noted. Her thought content was preoccupied with her recent release from Chicago-Read. Her insight was fair to good. At times the emotional nature of her experiences led to limited insight and a preoccupied focus on traumatic events while she was under the care of IDHS; however, she has consistently recognized that she is likely to experience ongoing difficulties now that she has been released due to the serious nature of the crime. She stated an awareness of being wary of interacting with people in the public settings due to a persistent fear during her confinement of people attacking her. She expressed surprise at experiencing common courtesies such as people saying,

3.      "Excuse me," when brushing her in passing. Although she had demonstrated strong emotions, she has kept her voice and speed within a reasonable range; she has not yelled or screamed. She has demonstrated good judgement, indicated her intention to follow the conditions of her release, and has developed coherent and well-thought out plans to meet those conditions.

4.      Ms. Webber has not demonstrated any signs of being a danger to herself or to others. While she has expressed anger and resentment about the conditions and length of her confinement, she has not made any statement threatening any individual involved in her case. To my knowledge she has interacted safely and appropriately in all public settings.

5.      Ms. Webber does not demonstrate any symptoms of a severe mental illness including psychosis, severe depression, or bipolar disorder. An alcohol abuse assessment performed by Health Care Alternative Services concluded that she does not require ongoing treatment at this time. Ms. Webber does demonstrate distractibility, hypervigilance, sleep disturbances and avoidance of stressors that are consistent with symptoms of post-traumatic stress. I believe that these symptoms cannot be effectively treated for her in the inpatient settings at either Chicago-Read or Elgin Mental Health Centers.

6.      If there are any questions regarding this assistance, please feel free to call or contact me as follows:

Laura A. Bauhof, Ph.D.
Licensed Clinical Psychologist
1725 S. Naperville Road
Suite 207
Wheaton, IL 60189
630-462-7005
630-462-7006 fax
laura.bauhof@gmail.com

Attestation: Under penalties as provided by law pursuant to § 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

Laura A. Bauhof, Ph.D.
_____
Laura Bauhof, Ph.D.

Date: 12-23-19

47

## AFFIDAVIT OF LAURA A. BAUHOF, Ph.D.

Upon first being duly sworn on oath, I, Laura A. Bauhof, depose, and state as follows:

1.    Ms. Marci Webber was in psychotherapy treatment with me in accordance with her conditional discharge from December 12 to December 17, 2019. Her outpatient treatment was disrupted when she returned to Chicago-Reed Mental Health Center to comply with a court order on December 23, 2019. I have been in periodic contact with Ms. Webber by phone and she has indicated that she is interested in continuing treatment with me when she is discharged.

2.    I have been conducting telehealth psychotherapy since March 20, 2020 as a result of the Covid-19 pandemic. If Ms. Webber is discharged while social distancing is still recommended, I am available to continue telehealth psychotherapy with her via video sessions.

3.    If there are any questions regarding this assistance, please feel free to call or contact me as follows:

> Laura A. Bauhof, Ph.D.
> Licensed Clinical Psychologist
> 1725 S. Naperville Road
> Suite 207
> Wheaton, IL 60189
> 630-462-7005
> 630-462-7006 fax
> laura.bauhof@gmail.com

**Attestation: Under penalties as provided by law pursuant to § 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.**

Laura A. Bauhof, Ph.D.

Date:   4-6-20

Exhibit **E** 

48 8250 7150

LETTER - RECEIPT OF FILINGS - CR/TR

1160 (Rev 3/20)



# OFFICE OF THE CIRCUIT COURT CLERK
## CHRIS KACHIROUBAS, CIRCUIT CLERK
### 18th JUDICIAL CIRCUIT COURT - DU PAGE COUNTY

Oct 5, 2020

People of the State of Illinois

VS

Marci M. Webber
Defendant

**\*FILED\***
OCT 05, 2020 02:41 PM

*Chris Kachiroubas*

CLERK OF THE
18TH JUDICIAL CIRCUIT
DUPAGE COUNTY, ILLINOIS

Case No. 2010 CF 2643

This letter will acknowledge receipt of the following:
Motion

which has been filed in the record in the above captioned case on __October 05, 2020__ . Copies of this filing have been forwarded to the following:

☐ The Honorable **Daniel P. Guerin,** Chief Judge of the 18th Judicial Circuit Court

☐ The Honorable **Brian F. Telander,** Presiding Judge, Felony Division

☐ The Honorable **Joseph T. Bugos ,** Presiding Judge, Misdemeanor and Traffic Divisions

☒ The Honorable __George J. Bakalis__ , Trial Judge

☐ The Honorable **Robert Berlin,** State's Attorney of DuPage County

☐ The Honorable **Kwame Raoul,** Attorney General of the State of Illinois

☐ DuPage County Public Defender

☐ Sent to the Second District Appellate Court

☐ Office of the State Appellate Defender

☐ Office of the Official Court Reporters

☒ Placed on Call by Clerk per Rule 30.10 - Court Date __October 27, 2020 at 9:00 a.m.; Room #4006__

☐ _____

for their further action pursuant to the laws of the State of Illinois or the Supreme Court Rules. You will be advised of the outcome of those proceedings **if required by law or rule of court.**

Sincerely,

Chris Kachiroubas
Circuit Clerk

A.O'Brien
Prepared by

49

IN THE CIRCUIT
COURT OF DUPAGE COUNTY

*FILED*
OCT 05, 2020 02:41 PM
*Chris Kachiroubas*

CLERK OF THE
18TH JUDICIAL CIRCUIT
DUPAGE COUNTY, ILLINOIS

PEOPLE OF THE STATE OF
ILLINOIS

        Plaintiff

    V.

MARCI WEBBER

        Defendant

)
)
)
)
)
)
)
)
)

Case No. 10 CF 2643
The Honorable
GEORGE BAKALIS

# PETITIONER'S MOTION TO SET THREE HEARING DATES IN OCTOBER OR EARLY NOVEMBER, 2020 TO HEAR EVIDENCE THAT IDHS CONTINUES TO FALSIFY COURT REPORTS, REVIEW TREATMENT PLAN AND IN THE EVENT OF AN APPELLATE DECISION TO HEAR ANY ISSUES ON REMAND

## Preliminary

1. Marci Webber proceeds Pro Se as a litigant forced to reside at Chicago Read Mental

- 1 -

Health Center on an acute civil unit without therapeutic services in a largely procrustean, but unequal environment as if it is a holding pen to wait out an appellate process resulting from an improperly served "Emergency" motion to Stay Judge George Bakalis' December 11th, 2019 decision using false information and received via regular mail the same day it was granted, the day a response was due. It's supposed to "Preserve the Status quo" to ensure preservation of the "fruits of the merits of the State's Appeal", a "Status quo" that actually was in the community and has not even come close to mirroring the "Status quo" on December 11th, 2019 prior to release and fails miserably, except to harm Webber, perhaps intentionally.

a. Webber has no access to legal resources, the internet, a computer or equitable use of her chart. She has no way to show the court that in July or August of 2019 Bradley West, her attorney of record then, successfully argued that the court does in fact have

- 2 -

51

Jurisdiction outside the time frame on appeal and can and in the interest of equal Justice should hear evidence of falsified reports, Chart notes and an environment Calculated or knowingly allowed to harm, not help Webber in a spirit of retaliation.

3. The court leniently expressed concerns regarding the "inaccuracy" of IDHS' court reports and disregard for the court's instructions in opposition of their cruel treatment of Webber and to transition Webber out of Custody trying to fulfill both the dictates of **Foucha v. Louisiana** and IDHS' "program" which treats NGRI's very differently than Civil committees whose "Mental illnesses" whether Situational, temporary or Supposedly biological are fundamentally the same and should not be detained "no longer" than they are "mentally ill" and dangerous from that "mental illness" Causing their conduct that constituted the crime they were charged with. The law is clear that Mental hospitals are not holding pens and are only to

- 3 -

52

be used to "treat" patients who are
"reasonably **expected**" to commit "serious
bodily harm" due to that "mental illness"
not to punish or try to cause conduct
any normal person might commit when
trapped **and** abused or to falsely imprison
for any other reason even political reasons,
for a decade, a year, a month, a week or even
a day as _freedom_ is this country's core
Value as exemplified in Foucha v. Louisiana.

4. The false persona on paper of Webber has
now harmed her grandchildren and continues
to harm her daughters and Webber now to an
Outrageous degree. Regarding only Webber,
the increasingly false statements and "dirty
Pool" as one employee of IDHS called it has
also caused the excessive restrictiveness that
Dr. Lesley Kane, Dr. Toby Watson and Dr. Dathan
Paterno warned the court of. Webber receives
no therapeutic treatment as requests to do
therapy with Dr. Craig Jock or for testing
and therapy with Dr. Chuck Stiava or tele=

53

Counseling with Dr. Laura Bauhof who
was <u>successfully</u> treating Webber the
latter half of December while the State
argues Webber's cruel detainment
should be continued "simply because
she is <u>unsuccessful</u>" with IDHS'
"treatment" on an appeal even IDHS legal
told Randy Kretchmar, esq. was a loser.
5. Despite years of increasingly harmful
"treatment" Webber has remained <u>non-
dangerous and sane</u> even amongst over
300 — most not reported to the court or in
her "medical" chart — room searches (only
one of 4 in 8 days was charted in mid-May,
2020), an emotionally vicious cavity search
which was documented only in a restriction
of rights as the result of a false accusa-
tion that her attorney was "<u>trying to
sneak in contraband</u>" over 40 (nearly all
without a hint of true "provocation")
Physical attacks on Webber (5 by staff),
no <u>access</u> to regular exercise in their gym <u>for 5 years</u>,

— 5 —

54

being housed with abusive, relentlessly antagonizing IDP's (intellectually deficient Patients) who are allowed to abuse Webber until she is forced to defend herself verbally so she won't become situationally depressed by having to isolate from a unit she does not leave -over- for IGP (Independant Grounds Passes) into her room while these incidents are not recorded in her chart unless she reacts verbally and it is exaggerated, twisted and taken out of context — the context including normal behavior as a result of abuse. Dr. Mir obaid called IDHS employees "expert manipulators of situations and behavior" in which they wrongly pathologize. This falls in line with the testimony Terry Nichols, RN was allowed to briefly offer in which they use for Patients, to "build a case against" for purposes such

- 6 -

as forced medication. This actually amounts to medical malpractice and is fraudulent. Psychiatrists Dr. Mir Obaid and Anna Rohrbacher who have known Webber and interacted or observed her since 2016, more than any IDHS doctor, stated Webber is <u>not</u> currently "mentally ill," does not need meds but needs a <u>discharge</u> (like Civil Committees get) and that her behaviors are <u>normal</u> for the harsh environment. Even her own current psychiatrist stated she would have been released if she were a civil patient — "Mental Illnesses" are fundamentally the same! Dr. Anatoliy Pyslar, just like the testimony in 2017, points to administration for this false imprisonment.

~ 7 ~

56

On November 19th, 2019 Dr. Pyslar told
Webber he was "fine if the judge released
her," that "Most likely [she] would be fine"
and that Webber did not meet the criteria
for bipolar NOS which he offered as if it
is some sort of consolation that bipolar is
"less severe"than Dr. Richard Malis' diagnosis
of "schizo-affective" because IDHS cant
go back on their lies" — lies that many
staff and doctors confirm are pervasive
within IDHS, lies used to tie Webber to
a "broken, harmful system," despite her
acquittal and overwhelming proof that
she is not currently "mentally ill and
dangerous." Dr. Orest Eugene Wasyliu
was clear prior to the initial trial that
the "perfect storm" of situation, multiple
Medications, an abrupt withdrawal due
to memory problems before Webber resumed
Medications indicated there was "no
chance whatsoever" for Webber to harm

— 8 —

57

anyone. Considering Webber's daughter had been sexually assaulted prior to Webber's medication problems, the fact that she had never caused anyone any serious injury before or since her very unwanted tragic but well-intentioned psychotic conduct proves the system with IDHS has failed her grossly.

6. Dr. Mir Obaid and Dr. Anna Rohrbacher are more experienced IDHS psychiatrists than Dr. Anatoliy Pyslar who has been assigned to "treat" Webber. These two psychiatrists have known, interacted and observed Webber since 2016 — Dr. Pyslar has known Webber since October 2019. All three have indicated consistently with the testimony of IDHS doctors in 2017 that "Administration ... Dr. James Corcoran" ... refuses Webber's release not because of the legally required

— 9 —

reasons. Dr. Obaid and Dr. Rohrbacher have told Webber "[she] does not need meds...[she] needs a discharge," that she is not currently "mentally ill" and has "every reason to be angry and sad." They, along with Dr. Pyslar express recognition that the "milieu" is causing her distress that is normal. After Webber's 2019 release Dr. Pyslar stated into Webber's cell phone that she seemed "like a new person, calm" and when she stated it was due to the change in environment he agreed, however after her December staffing accused her of "throwing [him] under the bus" for defending herself by mentioning the 2 calls with Dr. Pyslar and calls with other employees. Webber should not have to continue to express IDHS-inflicted

59

learned-helplessness and Stockholm syndrome when it helps allow IDHS to falsely imprison and harm Webber just so employees don't have problems with administration and **can** keep their jobs. On December 26th, 2019 Director of Psychology Debra Marsico reneged her promise that "[Webber could] keep her apartment if [Webber] did the front Door Diversion Project" — a project she interviewed with about 8 months ago — after Medical Director Robert Sobut joined the "treatment" team. Many people have told Webber that Dr. Corcoran ... administration are "influencing" staff to detain her. Dr. Mir Obaid said they are "expert manipulators" and retired U of C mental health Law professor Mark Heyrman blamed Dr. Corcoran who "thinks this is alternative sentencing, ... is a

—11—

60

Political animal keeping [Webber]
locked up so [she] can't sue..."
Every staff, dozens, Webber has
asked whether they think she is
"mentally ill and dangerous" denies
any fear of her. Even Dr. Obaid
told her in 2017 that he would
have no problem with her playing
with his grandchildren at a park, alone,
and recognizes her as a non-dangerous
asset to society just like she was
many years before the tragedy
when she tutored children after
her law school classes, coached
and cared for young children at the
YMCA and taught children art in
upstate New York's impoverished
local libraries. One anomaly of an
event does not define anyone nor
Webber but a witch-hunt of harm
and retaliation can destroy even
Webber who has shown a decade of

—12—

61

resilence via no relapse. Webber's supposed "behavior problems" are normal for someone being abused. She has the same complete support system as she had upon discharge with conditions. Dr. Gail Tasch, M.D. psychiatrist evaluated Webber on August 13th, 2020 and indicated Webber is not currently "mentally ill" or "dangerous." After testing Webber in January of 2020 Dr. Dathan Paterno indicated the same. The problem is IDHS' "treatments" and housing of Webber as well as politics evinced by Mark Heyrman, Esq.'s statement that "IDHS has no incentive to release [Webber] because [she] will only prove them wrong." The recent video affidavit to be made part of the record from August 10th, 2020 at youtube.com/watch?v=quJZmGBwJMM&feature=youtu.be as well as the playlist of videos to be made part of the record at

youtube.com/playlist?list=PLrz95p37EVh-Y9sTwhHnHYp2rKfdl7y9

evince a heartbroken, resilient, non-dangerous sane Webber the system is grossly failing. youtube.com/watch?v=AF9gdeC6J_4&feature=youtu.be shows this too.

Wherefore, Webber respectfully and

— 13 —

62

desparately requests this Court allow Webber, Prose, to conduct a hearing using witnesses she needs to prove IDHS and the State continues to ignore her acquittal and the dictates of the law and human decency by arranging cruel conditions and continuing to falsify reports indicating that they have no intention or good will towards Webber's restoration or release. Webber needs to be discharged as soon as possible to her support system which includes Terry Johnson, Esq. and Dr. Gail Tasch. Ideally she should be discharged so she can take the job and use the support system in Arizona provided by Stelia Corniciuc as testified to in 2017. Webber requests an order for discovery of all documentation organized like the State gets including all emails referring to Webber within IDHS to be executed immediately due the high burden of proof with subordinates and

—14—

63

and layers of management "influencing" — noted in the September 18th, 2019 decision — a perjurous, pernicious Persona of Webber. Webber also requests a writ for Chicago Read to ensure her appearance for 3 days of testimony, Preferrably Consecutive and a copy mailed of all correspondence to be in the care of Terry Johnson at 505 E. Illinois Street, North Pier, Lower Level #1, Chicago Illinois (312)922-4022 due to the constant frustration and withholding of Webber's mail causing her to miss a September 22nd, 2020 appearance as referenced in a letter the day she received the court's mail sent on September 23rd, 2020. Webber requests an order to be allowed to eat in the Courts' Cafeteria to alleviate the stress of 3 full days of Testimony, having to return to an overly harsh enviroment. Respectfully,    Please include a writ to Chicago Read for transportation of webber to court.

Marci M Webber   9/24/2020
Pro Se
4200 N Oak Park Av
Chicago, Il 60634 (773) 794-3950   — 15 —

64

<u>CERTIFICATE of SERVICE</u>

This is to Certify that a copy of this
Motion is being given to Vera Hosley,
Webber's Social Worker, to mail to Joe
Lindt, assistant State's Attorney and
the clerk of court at 505 N. County
Farm Road, Wheaton, IL and
Personal Service delivery by investigator
Robert Hanrahan on September 24th,
2020 or immediately following that
date.

Under the pains and penalties of
Perjury this entire document is the
Sworn truth.

Marci M Webber 9/24/2020
_____
Pro Se litigant

Marci M. Webber
CRMHC
4200 N. Oak Park Ave.
Chicago, IL 60634
(773) 794-3950/4036
Marci webber 101 @ gmail.com (no access from CRMHC)

—16—

65

Dear Clerk of Court          9/23/2020

As of 9/23/2020 I am now
aware of the court date set
for me on 9/22/2020 — yesterday!
I received your Mail Post Marked
9/9/2020 at 3:45 today. I
received Mail from fed. Court
post Marked 9/11/2020 yesterday
and a letter from Akin law
firm post marked 9/17/2020 also
yesterday. I have had numerous
Problems with IDHS giving me
Mail and now have missed an
important court date. I have
asked Terry Johnson for help and
Will be filing a Motion electronically
through his office asap asking for
3 hearing dates at the end of Oct
or early November before Judge Bakalis
retires, I ask that you please try
to have these 3 days consecutive and
issue a Writ with any Correspondance
copied to Terry Johnsons office for me at
505 E. Illinois St, North Pier Powerlevel#1 Chicago,
IL 60611 in Case IDHS Withholds my Mail again
If possible please call me at (773) 794-3950 to
Communicate dates & to (312. 922-4022, Thank you, Maria W.

66

### AFFIDAVIT OF LAURA A. BAUHOF, Ph.D.

Upon first being duly sworn on oath, I, Laura A. Bauhof, depose, and state as follows:

1.    Ms. Marci Webber began treatment with me in accordance with her conditional discharge on December 12, 2019. Prior to beginning psychotherapy I had spoken with Ms. Webber by phone approximately 5 times while she was at Chicago-Read Mental Health Center and on the morning of December 12 prior to her appointment.

2.    In addition to her appointment on December 12, Ms. Webber also presented for a scheduled psychotherapy appointment on December 17, 2019. At both of her therapy sessions I evaluated Ms. Webber to be appropriately oriented to person, place and time. She did not demonstrate any signs of psychosis. Her appearance was normal and her dress was appropriate. Her mood was anxious and she demonstrated a full range of affect that was congruent to the topic, i.e., when talking about her daughter she was tearful and sad and when talking about her experiences since being released she was smiling and positive. Her memory was intact. Her thought process and perception were both normal. Her interview behavior was appropriate and her speech was normal. Ms. Webber's attention was distractible, which she noted. Her thought content was preoccupied with her recent release from Chicago-Read. Her insight was fair to good. At times the emotional nature of her experiences led to limited insight and a preoccupied focus on traumatic events while she was under the care of IDHS; however, she has consistently recognized that she is likely to experience ongoing difficulties now that she has been released due to the serious nature of the crime. She stated an awareness of being wary of interacting with people in the public settings due to a persistent fear during her confinement of people attacking her. She expressed surprise at experiencing common courtesies such as people saying,

3.    "Excuse me," when brushing her in passing. Although she had demonstrated strong emotions, she has kept her voice and speed within a reasonable range; she has not yelled or screamed. She has demonstrated good judgement, indicated her intention to follow the conditions of her release, and has developed coherent and well-thought out plans to meet those conditions.

4.    Ms. Webber has not demonstrated any signs of being a danger to herself or to others. While she has expressed anger and resentment about the conditions and length of her confinement, she has not made any statement threatening any individual involved in her case. To my knowledge she has interacted safely and appropriately in all public settings.

5.    Ms. Webber does not demonstrate any symptoms of a severe mental illness including psychosis, severe depression, or bipolar disorder. An alcohol abuse assessment performed by Health Care Alternative Services concluded that she does not require ongoing treatment at this time. Ms. Webber does demonstrate distractibility, hypervigilance, sleep disturbances and avoidance of stressors that are consistent with symptoms of post-traumatic stress. I believe that these symptoms cannot be effectively treated for her in the inpatient settings at either Chicago-Read or Elgin Mental Health Centers.

6.    If there are any questions regarding this assistance, please feel free to call or contact me as follows:

67

Laura A. Bauhof, Ph.D.
Licensed Clinical Psychologist
1725 S. Naperville Road
Suite 207
Wheaton, IL 60189
630-462-7005
630-462-7006 fax
laura.bauhof@gmail.com

Attestation: Under penalties as provided by law pursuant to § 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

*Lena A. Bauhf. PhD*

Laura Bauhof, Ph.D.

Date: 12-23-19

68

## AFFIDAVIT OF LAURA A. BAUHOF, Ph.D.

Upon first being duly sworn on oath, I, Laura A. Bauhof, depose and state as follows:

1.     Ms. Marci Webber was in psychotherapy treatment with me in accordance with her conditional discharge from December 12 to December 17, 2019. Her outpatient treatment was disrupted when she returned to Chicago-Reed Mental Health Center to comply with a court order on December 23, 2019. I have been in periodic contact with Ms. Webber by phone and she has indicated that she is interested in continuing treatment with me when she is discharged.

2.     I have been conducting telehealth psychotherapy since March 20, 2020 as a result of the Covid-19 pandemic. If Ms. Webber is discharged while social distancing is still recommended, I am available to continue telehealth psychotherapy with her via video sessions.

3.     If there are any questions regarding this assistance, please feel free to call or contact me as follows:


Laura A. Bauhof, Ph.D.
Licensed Clinical Psychologist
1725 S. Naperville Road
Suite 207
Wheaton, IL 60189
630-462-7005
630-462-7006 fax
laura.bauhof@gmail.com

Attestation: Under penalties as provided by law pursuant to § 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.


Laura A. Bauhof, Ph.D.

Date:  4-6-20

69

## *NGRI BLUEPRINT FOR DISCHARGE*
### (Minimal Requirements)

1. Accept that you have a mental illness.
2. Know your diagnosis.
3. Know your medications and what they do.
4. Know at least six symptoms of your mental illness.
5. Know how your mental illness influenced your crime and have remorse.
6. Accept responsibility for your mental illness.
7. Acknowledge the need to remain in treatment after discharge and to continue to take medications.
8. If you have a substance abuse diagnosis, admit that you have a substance abuse problem.
9. If you have a substance abuse problem stay in treatment for it all the while you are at EMHC, to include MISA, unit groups, Individual Substance Abuse Counseling, AA, other outside groups and organizations that come into the hospital - not just MISA for three months and then nothing else.
10. Have a relapse prevention plan in place and be able to talk about it. It must include symptom identification. If there is a substance abuse problem, know the warning signs of relapse and have a relapse prevention plan in place and be able to talk about it.
11. Be able to talk about what professional and social supports you will have in the community.
12. Be able to accept outpatient restrictions of a conditional discharge.
13. Know what your risk factors are. Address all risk factors with treatment interventions recommended by the treatment team and have good attendance.
14. Be able to talk about some clearly defined future goals for yourself in the community.
15. Be willing to work on those aspects of personality that contributed to your being in the hospital and that may be keeping you here.



16. Obey unit rules and avoid conflicts with others.

70



Marci Webber
Granto
4200 N Oak Park Av
Chicago, IL 60634

The Circuit Court Clerk
DuPage County
505 N. County Farm Rd.
Wheaton Ill 60187

**71**

Exhibit **F**

Chicago-Read Mental Health Center

(ignored complaints ← Written by Marci
by Dr. Obaid) They continued to take the DVD player TV from

## COMPLAINT FORM

**Name of Complainant:** MARCY WEBBER   **Unit:** B.So   **Date:** 9.23.2020   **Time:** 1815

me while I was watching then claimed I don't want to share when I started using it in the 1st place so another guy could watch the other TV SHARING upon my initive)

**Complaint/Right Violated:**

**Where did it happen (location)?** B. So.   **Phone:** 773-794-3___

**When did it Happen?** 9.23.2020. 18:__

**Describe the Incident/Circumstance:**

Pt (Ms MW) is C/o following problems that is aggravating her and making her coping skill weak, as she closing hope in this treatment milieu. Following are her complaints.
(1) Pt (MW) is requesting off-unit pass to go to cafeteria/activity room. Light exercise, that will help her to allay her frustration
(2) Pt wants a clear directive from treatment team that she can have a bag of "Gummy worm candies" to be allowed to have access as much she want, helps her with her problem of Bruxism
(3) She want to have "Soda" whenever she feels to have the ____ least twice per day
(4) Pt want a TV (activity therapy) & DVD player access most of the time, as she feel these are her only coping tools;

**Witnesses to incident (please print):**
1. Ms ___ MD
2. Pet Pearce R.P.2   Dr Obaid MD psych   3. Santos Simon Alakkall R.
4.   Joe Morici MHT2

meeting 1800 to 2015

**Statement of resolution requested:** (What does the complainant what done?)
Complainant advised to discuss her request with Unit psychiatrist and to team.

**Resolution of Complaint:** (how was complaint resolved?)   Date   Time:
A meeting was held with Ms MW, the Complainant, Unit RN (Ms. PP) and this writer psych o.D. Ms. MW advised to discuss her request with Unit psychiatrist and to team, and get a written order for each specific problem

WEBBER, MARCI
**Complainant's Name (print)**

X
**Complainant's signature**
Marci to sign

9/23/2020
**Date**

*Attach all existing documentation to this form and forward to Human Rights and Ethics Committee in Administration*

-43-

Exhibit G

Chicago-Read Mental Health Center

COMPLAINT FORM — Notice!

**Name of Complainant:** Marci Webber  **Unit:** B-S  **Date:** 9/25/2020  **Time:** 6:80 pm

**Complaint/Right Violated:**

You are taking advantage to overly restrict me!

**Where did it happen (location)?** B. South  **Phone:** _____

**When did it Happen?**

— STOP TAKING MY COPING TOOLS!

**Describe the Incident/Circumstance:**

I had paused the TV/Movie (switching back+forth) Went to answer my phone & Miguel who asked per RN earlier the times I can use my DVD player (1-2:30 pm + 8-10 pm) Went over to the tv w/a video in hand — Jennice Lampkin was in her room, I told him I was finishing something & he ignored me moving the tv to set up for Jenica who last week, the week before, the month before ... he has Never asked to use the TV. All I wanted was the courtesy of being asked whether I was done instead I got Miguel refusing to let me speak, yelling at me & ESCALATING the situation then

**Witnesses to incident (please print):** Involved 1. Dr Pearce  2. (Saibu, Sam, Miguel)  3. _____  4. — threatening me w/a shot just w/c I pulled out the cords from the outlets

**Statement of resolution requested: (What does the complainant what done?)**

This is an abusive environment & I WANT Permanent access to my Coping tools 24/7 like the LAW dictates & Not to be threatened w/a shot

**Resolution of Complaint: (how was complaint resolved?)** Date _____ Time _____

★ I will never threaten or harm anyone physically & refuse to take any form of medication especially when staff is provoking & escalating

**Complainant's Name (print)** _____  **Complainant's signature** Marci M Webber  **Date** _____

institutional injurious emotional Distress

*Attach all existing documentation to this form and forward to Human Rights and Ethics Committee in administration*

I WILL SUE! I have never presented a risk one in DHS w/ imminent bodily harm!

*[Handwritten annotations across top:]* THese ARE DesTRICTIONS
Exhibit H — There have been no groups since March, 2020
X This "group" like the others was never held

Unit **B-SOUTH**     Patient Name **WEBBER, MARCI**     Patient ID **000906420**

## Medication Management

| Group Leader Name (Please, print full name) | Group Date | Attendance Code | Start Time |
|---|---|---|---|
| Joseph, Sanitha | 9/16/2020 | R | 1100 |

Attendance Code: A=Attended; L=Left Group; E=Excused; R=Refused; C=Cancelled; S=Substitution; H=Holiday; O=Other

**Data:** Staff used interpreter for group   ☐ Yes   ☐ No   ☑ N/A

☑ Lecture   ☐ Group Discussion   ☐ Handout   ☐ Video

**Attentive to topic:**   ☐ Gave/accepted feedback   ☐ Followed directions
☐ Passive and did not respond   ☐ Disruptive
☑ Other: refused

**Assessment:**   ☐ Patient demonstrates understanding   ☑ Patient is symptomatic but, able to participate
☐ Patient is symptomatic and unable to participate in group at this time
Other: 

## Group purpose is to increase patients' understanding of:

How to recognize and take action to manage and relieve psychiatric symptoms, and when to notify health care professional.

### The group expected outcome and treatment plan goals:

☐ Effective, patient applies content to treatment

☑ Not effective at this time but, will continue group goals as follows:

Staff will continue to:   Encourage attendance, encourage participation, and continue patient education per treatment plan.

### Additional Comments:

pt refused to join the group, pacing and stiting in the room. Group talked about the importance of understanding the side effects of medicatons.

*[Handwritten:]* B.S. They do This "Never accused of ( = Trying to make me look Manic)

**Signature and Title:** *[signature]* SJoseph, RN     **Date:** 9/16/2020
Joseph, Sanitha

*[Handwritten:]* THIS Continues even after my Motion — re on 11/29/2020

— 42 —

*FALSE Exhibit I* — *Marcia's hand writing crazines* 74

## Thought Process
- [x] Egocentric
- [ ] Tangential
- [ ] Incoherent
- [ ] Evasive
- [ ] Perseveration
- [ ] Circumstantial
- [ ] Loose Associations
- [ ] Magical Thinking
- [x] Other  _denies_
- [ ] Distracted
- [ ] Goal Directed
- [ ] Rambling
- [ ] Concrete
- [ ] Logical/Coherent
- [ ] Flight of Ideas
- [ ] Hesitant

*FALSE*  any uses
But wants to
Run the unit ← Hostility *

## Attitude/M...
- [ ] Cooperative
- [ ] Cheerful
- [ ] Anxious
- [ ] Suspicious
- [ ] Tearful
- [ ] Pessimistic
- [ ] Dramatic
- [ ] Euphoric
- [ ] Irritable
- [ ] Antagonistic
- [ ] Assertive
- [ ] Passive
- [ ] Other
- [ ] Calm
- [ ] Guarded
- [ ] Depressed  *
- [ ] Fearful   *TRUE*
- [ ] Seductive
- [ ] Neutral
- [ ] Optimistic
- [x] Beligerent
- [x] Angry
- [x] Resistant
- [x] Aggressive

(* SHE IS (FALSE)

## Daily Living Skills ...Screen
### Hygiene
- [x] Independent
- [ ] Minimal Assist
- [ ] Complete Assist
### Self-Care
- [x] Independent
- [ ] Minimal Assist
- [ ] Complete Assist
*FALSE*
### Problem Solving
- [ ] Effective
- [x] With Difficulty
### Language  [ ] Normal Barriers
Primary Language  _English_

## Thought Content
Delusions/Type  _denies_
Hallucinations/Type  _denies_
### Orientation
- [ ] Person
- [x] Place
- [ ] Time

## Attention
- [ ] Normal
- [ ] Distracted
- [ ] Preoccupied
- [ ] Inattentive
- [ ] Poor Eye Contact
- [ ] Other
- [ ] Hyper-Alert
- [ ] Drowsy
- [x] Impulsive
- [x] Restless

## Affect
- [ ] Appropriate
- [x] Labile
- [ ] Contradictory
- [ ] Inappropriate
- [ ] Hostility or Rage
- [ ] Flat
- [ ] Blunted
- [ ] Dramatized
- [ ] Restricted
- [ ] Incongruent

## Appearance
- [x] Clean
- [ ] Unkempt
- [ ] Eccentric
- [ ] Younger
- [ ] Casual
- [ ] Other
- [ ] Meticulous
- [ ] Poor Hygiene
- [ ] Seductive
- [ ] Older

## Memory
- [x] Normal
- [ ] Poor Recent
- [ ] Memory Poor
- [ ] Remote
- [ ] Memory Impared
- [ ] Amnesia

## Judgement & Impulse Control
- [ ] Appropriate
- [x] Poor Impulse Control
- [x] Poor Insight
- [x] Irrational Judgement
*False*

## Ability/Willingness to Participate in Treatment
- [ ] Willing/Able
- [ ] Vacillating
- [ ] Hesitant
- [ ] Passive
- [ ] Limited Ability
- [x] Other
- [ ] Adequate
- [x] Resistive
- [x] Unmotivated
- [ ] Absent

*FALSE, just not their abusive illness indoctrination*

## Medical Issues
- [x] None
- [ ] Active and Stable
- [ ] Active, but Unstable
- [ ] Pain Issues Addressed
- [ ] Metabolic Syndrome
- [ ] Significantly Problematic
- [ ] Adherant

## Medication Issues
- [ ] Adherent
- [ ] Needs Encouragement
- [ ] Resistive/Refusing
- [ ] Knowledgeable
- [ ] Knowledge Deficit
- [x] Other  _not on any Meds_

## Risk Factors
- [ ] None
- [ ] Homicidal Ideation
- [ ] Fall Risk/Type  _denies_
- [ ] Suicidal Ideation
- [ ] Homicidal Plan
- [ ] Self-Damaging-Impulsive   *TRUE but not inquired*
- [ ] Recurrent suicide gestures or self-mutilation
- [ ] Other
- [ ] Suicidal Plan

*SHE*

Following are NEW findings in this assessment:
Hostile  no changes
Never Asks *

Evaluation of Last Period/Response to Treatment:
Same

Assessment/Nursing Diagnoses:
Ineffective Coping Skills ←
(*FALSE*) I'm pullin them out of my Arse

Desired Outcomes for the Next Treatment Period:

*by Woseua Oliver-Smith - Not a Doctor!*
▬▬ w/ No evaluation
I Stay away from her

*FALSE I told Jeannie spring 2020 "Jeannie" Dr Pusler Dr maldonado said He said I'm not impulsive "He said He'd take it u'tll take it out'*

Identified Barriers to ____ atment/Recovery: *Will not adhere to court rules*

75

Interventions:
- .

Pain Management Assessment/Intervention:
- .

Woserno Oliver-Smith/CO

**Printed Name/RN Signature**

Date: 9/18/20 Time: 1095 Am.

*False, only petty ones that hurt me & violate my rights & most that everyone breaks*

Exhibit J

76

**NGRI BLUEPRINT FOR DISCHARGE**
(Minimal Requirements)

*These are minimal requirements*

*Violative of the Constitutions!* "Treatment" is used as a liberty deprivation/preventative detention

See people v Robbin

1. Accept that you have a mental illness.
2. Know your diagnosis.
3. Know your medications and what they do.
4. Know at least six symptoms of your mental illness.
5. Know how your mental illness influenced your crime and have remorse.
6. Accept responsibility for your mental illness.
7. Acknowledge the need to remain in treatment after discharge and to continue to take medications.
8. If you have a substance abuse diagnosis, admit that you have a substance abuse problem.
9. If you have a substance abuse problem stay in treatment for it all the while you are at EMHC, to include MISA, unit groups, Individual Substance Abuse Counseling, AA, other outside groups and organizations that come into the hospital - not just MISA for three months and then nothing else.
10. Have a relapse prevention plan in place and be able to talk about it. It must include symptom identification. If there is a substance abuse problem, know the warning signs of relapse and have a relapse prevention plan in place and be able to talk about it.
11. Be able to talk about what professional and social supports you will have in the community.
12. Be able to accept outpatient restrictions of a conditional discharge.
13. Know what your risk factors are. Address all risk factors with treatment interventions recommended by the treatment team and have good attendance.
14. Be able to talk about some clearly defined future goals for yourself in the community.
15. Be willing to work on those aspects of personality that contributed to your being in the hospital and that may be keeping you here.
16. Obey unit rules and avoid conflicts with others.

Exhibit **K**

*F.T.*
Final
10/4/19

\* my "treatment" is excruciatingly harsher than the others

& violates
the Constitution **Guidelines for Staff in Working with Marci Webber** (est. 10/2/19)

& human
decency **General Suggestions for Interaction**

- Set and enforce boundaries that are clear and consistent, and that adhere to unit/hospital expectations and regulations.
- Ms. Webber should receive verbal redirection if she displays verbally abusive/ inappropriate language. If inappropriate behavior persists after 1 prompt, Ms. Webber escorted grounds pass privileges (once earned) be suspended for 24 hours. Additionally, if the inappropriate behavior persists, staff should also walk away from he and ignore her behavior/commentary. Do not engage in a power struggle with her.
- Ask Ms. Webber to prepare for meetings with staff by writing down her questions or concerns ahead of time. Any topics identified as already addressed (e.g., her current NGRI status, complaints regarding her past/present care, unit expectations and regulations) will not be entertained repeatedly.
- Staff will show Ms. Webber where the phone numbers for advocacy agencies are located and explain the usual avenues to place complaints. Any and all allegations of abuse or neglect will be addressed immediately per CRMHC protocol. Staff will provide all necessary medical attention deemed appropriate per CRMHC protocol.
- Staff should make efforts to validate Ms. Webber's concerns and complaints (e.g., "I hear what you are saying," "That sounds very frustrating," etc.)
- If you do not have an answer for Ms. Webber, or are unsure of the proper answer, state the following: "I will check with the treatment team and get back to you."

**Room Searches**

To ensure that her treatment plan is followed with respect to food, contraband and restricted use items in her room, staff will conduct random room searches, at minimum, three (3) times per week. These searches are to follow CRMHC policy and procedure including initiating a restriction of rights, as needed. Searches should be conducted by a minimum of two (2) staff, one of whom must be a Security Officer. Each time that items are found that violate Ms. Webber's treatment plan with respect to food, contraband, restricted use items and proper storage of belongings, a Security Incident Report must be completed. During these searches, staff will ensure that loose papers fit in her 2 accordion files. If they do not, the papers should be removed and placed in the plastic bag used to store her papers on the unit. Staff should ensure that they check the ceiling and vents, under furniture and under her mattress. They should also check for items hidden in her pillow and mattress.

**Consumer Searches**

Searches will follow CRMHC policy. All searches of the consumer will be conducted by a minimum of two (2) staff, one of whom must be female. For the initial search, Ms. Webber should be placed in a gown and should she refuse to be searched, a restriction of rights form will be initiated. When searching Ms. Webber, staff should not make physical contact with her. She should be asked to empty her pockets and shake out her garments. Socks, shoes and sleeves should be checked carefully. If warranted in future searches, a restriction of rights form can be completed, and Ms. Webber can be placed in a gown.

\* The sticky note
said **not to give this** →
to me

Page **1** of **2**

Confidential
for direct care
staff only

78

**Staff Meetings/Interactions with Ms. Webber**
Staff should not meet with Ms. Webber alone. A second staff is not necessary in group treatment situations.

**Releases of Information (ROIs) for Private Attorneys**
The Social Worker should obtain releases of information for each of Ms. Webber's (private) attorneys of record. ROIs are not needed for ASAs (Joe & Jennifer Lindt) or APD (if one is assigned)

**Medications**
ALL medications MUST be crushed or given in liquid form.

**Ear Plugs**
Ms. Webber is permitted to use her plastic/rubber/foam earplugs to assist with sleep. These are to be kept in the Restricted Use Item cabinet when not in use, and given to Ms. Webber at bedtime.

**Staff Cellular Phones**
Do not use your personal cell phone at the request of Ms. Webber for any type of research or inquiry.

**Document Copies**
Copies of documents should be limited to five (5) sets per week. Ms. Webber's Social worker will make the copies and should keep track of the number of copies that are made.

**Documentation**
The assigned Nurse and MHT shall complete daily shift notes. All other staff are to document both notable positive and negative interactions with Ms. Webber by the end of the shift in which they occur.

**Data for Court Reports**
Every Friday, the Social Worker will scan/email the preceding week's Progress Notes to Dr. Debra Marsico, Forensic Coordinator. Dr. Marsico will highlight the notes that will subsequently be transcribed into a Word document by Ms. Edna Coleman, Administrative Assistant. Having each note already in Word format will expedite the data collection for Court Reports.